Morning, Your Honor. May it please the Court, my name is Travis Rossman and I represent Appellant Malek Al Maliki. I'd like to reserve three minutes for rebuttal. The first issue I'd like to discuss today is the constitutionality of the statute under which Mr. Al Maliki was convicted. He was convicted under 18 U.S.C. section 2423, which criminalizes traveling and foreign commerce and engaging in any illicit sexual conduct. Our position is that this statute is unconstitutional facially and as applied to Al Maliki because he was no longer in foreign commerce and his alleged offense conduct was not commercial. The allegation was that he molested his own children and that would not be commercial activity and he was already in Syria. He stayed there for several months and he was no longer in the stream of foreign commerce. Now, the courts have split on... His light's not on. The reason it's not forfeited is that it goes to the subject matter jurisdiction of the court to adjudicate the case. An argument relating to subject matter jurisdiction can never be forfeited or waived. It was not raised in the district... We don't do real well sometimes explaining what subject matter jurisdiction is and isn't, but I don't see why it's clear that the court had subject matter jurisdiction here. They may not have been able to be prosecuted because the statute was unconstitutional, but that surely doesn't mean that the court didn't have subject matter jurisdiction over what's clearly a criminal prosecution, so I don't get that. Well, if the statute is unconstitutional because it exceeds Congress's powers under the foreign commerce clause, then the district court would lack subject matter jurisdiction. And what do you cite for that as opposed to the court has jurisdiction but the government loses? I'm sorry, I don't understand the question, Your Honor. There may be some things over which we have no jurisdiction whatsoever. There may be other things over which we certainly have jurisdiction to resolve the dispute, but in this case, the government, if you were right, would then lose that dispute had you raised it below. So what do you cite to say that we have no subject matter jurisdiction at all? What do you rely upon for that? Well, I rely on several cases. The closest case to this case that's favorable to us is U.S. v. Weingarten. That's the case out of the Second Circuit. That case has some distinguishable facts. It involved travel from Belgium to Israel. It did not involve travel directly from the United States, but we believe some of those principles are applicable here. Well, does Weingarten discuss this as a question of subject matter jurisdiction? It talks about it in terms of a jurisdictional nexus or a territorial nexus. Because when you talk about that case in your brief, you don't cite it for the point about which you were being asked. Right. Well, I think it all dovetails together. If the statute's unconstitutional, then the court didn't have subject matter jurisdiction. What do you cite for that specific proposition, I believe, is what Judge McKeague is asking you. It is. I don't have a case that says that verbatim. But I think that... Do you have anything that's close? Well, I have plenty of cases that say that subject matter jurisdiction can't be forfeited or waived. One of the problems, one of the reasons the U.S. Supreme Court has been tightening up this distinction between subject matter jurisdiction issues and other issues is the consequences of saying something goes to subject matter jurisdiction. And one of the huge consequences of what would be really problematic if you were right here is it would mean all courts would have this sua sponte duty in all cases, civil, criminal, whatever, to make sure, to ensure they have subject matter jurisdiction, that every statute in front of them, federal statute, or state law for that matter, is constitutional. And so there'd be no incentive to have to raise it at the trial level, which is not good. And someone could always decide to wait until after losing to suddenly at the Court of Appeals raise all these constitutional arguments, which is just not a great system. But that would be the effect of your argument. You would never be able to forfeit or, for that matter, affirmatively waive a challenge to the validity of a statute, right? Well, I think here's the difference. But aren't I right? If it's subject matter jurisdiction, you've got lots of cases that say it's not forfeitable or waivable. You could have situations where people even waived it, said, no, I'm not going to challenge this. And then here we are on appeal, we would be having these challenges in the first instance, right? That has to be right. Right. Well, I think it is. I don't think there's any trouble with challenging subject matter jurisdiction for the first time on appeal. Like you said, there's plenty of cases that allow that. And it is bad policy or a bad approach to challenge the constitutionality of a statute ordinarily for the first time on appeal. But I think it depends on the basis of the challenge. If the challenge is that it exceeds Congress's powers under the Foreign Commerce Clause or under whatever provision of the Constitution justifies the statute, I think that inherently goes to subject matter jurisdiction. And the authority for that is yourself, right? Well, I didn't brief that issue thoroughly because I didn't think that that was the battleground. But I see the court's concern. Ultra viris is ultra viris. You either don't have power because it's outside Commerce Clause or you don't have power because it runs up against the Bill of Rights provision. They're both beyond power. I don't even get your distinction between Bill of Rights guarantees and Commerce Clause. We can throw you a lifeline here. Basically what we're getting at is let's assume that we don't accept your argument about there simply is no subject matter jurisdiction. Doesn't mean you can't complain about this. But you still then have to satisfy the plain error test. And if that is, in fact, what we're dealing with here, given the unclear case law on this and the fact no circuit has agreed with you, then why would the decision here be plain error? Well, the decision would be plain error because Al-Maliki's conduct did not substantially affect commerce. It occurred in a foreign country. And I don't believe that Congress can regulate somebody's activity overseas in a foreign sovereign state. There's no authority for once in commerce, always in commerce. Congress has no power to regulate all of a citizen's downstream conduct. And there's no plenary police power over a citizen's conduct when a citizen is overseas. And just to come back to the plain error standard, I don't think there's any error plainer than convicting somebody under a statute that's unclear. I'm inclined to agree with you on prong one. I'm inclined to agree with you, actually, on prongs three and four, given that it's a criminal case. But how do we meet prong two, that the error was plain? Because I mean, I really think it's a very powerful argument you're making. But you have some other court of appeals cases that seem to be going against you on this very provision, right? Sure. And I think we then have some cases that say something's not, quote, plain error if there's authority going the other way. Right. So the courts have been split over what standard of review to apply to these challenges. Most courts cite to the Japan Line case from the U.S. Supreme Court for the proposition that Congress has broad power under the Foreign Commerce Clause. But that case dealt with a state's power to tax shipping containers that were used exclusively in foreign commerce. It really says nothing about what Congress may do. I completely agree with that case. I thought, with your interpretation of that case, but I thought there was, what, a Third and Ninth Circuit case? Am I getting it right? What about those two cases? There is, Your Honor. Are they more on point? Pendleton, out of the Third Circuit, is almost directly on point. It held that there has to be a jurisdictional nexus with the United States, and that the flight leaving from the United States constitutes a jurisdictional nexus. And that that satisf— But you would lose under that theory, right? Yes, Your Honor. We would lose if this court filed Pendleton. That seems to be the contrary authority that's—and isn't that the same subsection, or no? Isn't that the same subsection? It is. Okay. It is. And there's also the Clark case from the Ninth Circuit. It's a little bit different because the defendant there engaged in commercial sexual activity. So what's your theory, then, about how we get around the prong two, which says the error in prong one is plain in prong two, or otherwise obvious or clear as it's somehow defined? How do we get around that, given the procedural posture under which this particular issue is being presented in this case, as opposed to if we were starting with a clean slate? Well, I think the only way around it would simply be to take notice that the Foreign Commerce Clause doesn't reach this activity, that he was not engaged in foreign commerce, and that his trip abroad simply didn't satisfy that. Given Weingarten—or given Pendleton, that argument may be foreclosed. I mean, I think your best case is Morrison, but you still have these other Court of Appeals cases, because that's a case that says we can have categorical limits on Commerce Clause powers, and sexual violence is not economic. It's a lot of bad things. It's just not economic. Right. It's not commerce. So that seems really powerful, but then you have these Court of Appeals decisions, and aren't they post-Morrison? Yes, they are. Are they both post-Morrison? Yes. Yeah. The statute was enacted relatively recently. It was designed to sort of close a gap in the law for people who were sex tourists going abroad and where the government could not prove intent, but it's been applied and Congress also passed the law to apply to non-commercial conduct. Did they make any findings when they did this about impact on commerce? I believe they did, Your Honor. What did they say? I believe they talked about how tourists traveling abroad and paying for sex, that that's commercial activity. It has negative impacts in the United States and abroad. No, but did, I'm sorry, did they have any findings about how, where it wasn't commercial? In other words, you weren't paying for it, and so how that affected commerce. Do you see what I'm saying? I don't recall. I mean, you realize it's a pretty easy case if we're talking about someone who's paying for this because that's truly commercial, but in your setting where that's not the case, I'm just wondering if there were findings that said, well, aggregate and kind of a wickered thing. I don't recall any such findings, and I would argue that it simply can't be. His conduct occurred overseas, so how that would have an impact on foreign commerce absent some proof that he intended to engage in these acts when he engaged in the commerce or when he engaged in the travel, I just don't see any way that we could tie that to any kind of impact on commerce in the United States. If this had happened in the United States, it would have been prosecuted in state court. If this statute is upheld as constitutional, the federal government could basically reach any conduct that a citizen commits abroad. If I traveled to Canada and I jaywalked, I could be held in the federal court if Congress passed a statute. There's no federal statute applicable to the states, right? They can't after Morrison. Right. That's correct. But I'm right. There is no federal statute that would criminalize the activity for which your client was criminalized in this country. Right. It would be a state court case if the offense conduct had happened here. Right, because there is no federal statute covering it within the country. Their argument is even though we couldn't do it in the country, we can do it out of the country. The minute you cross our borders, you can suddenly do this is the government's theory. I think that's right. Yeah. So there's no federal statute that deals with crossing state lines for this activity? Well, there is. Right. So there is a federal statute that deals with crossing state lines, but again, with just purely a local offense conduct, there's no statute that would cover that. So if you took a minor child from Kentucky to Ohio and did these acts, that could potentially be covered under federal law. But if you were purely intrastate, then certainly the federal government could not reach it. And I see my time is almost up, so instead of going on to another issue, if the court has no questions, we can finish. Thank you. All right. Mr. Reinke. May it please the court, my name is Dan Reinke. I represent the government in this appeal. The argument seems to be that the statute is unconstitutional because there's no meaningful nexus between the travel and foreign commerce and engaging in the illicit sexual conduct. Would you agree that your theory of the case is that the minute you leave this country, the act of leaving the country, which involves, quote, foreign travel, and then you conduct this kind of act, even though it's not commercial in any way, the government has authority under your theory of the Foreign Commerce Clause power? Yes. That's astonishing. You don't see that as a stretch if we weren't reviewing this on Plain Air Review? Well, the Constitution gives Congress the authority, and it's very broad, obviously. The Constitution gives Congress the right to regulate commerce with foreign nations. This is commerce with foreign nations. Well, he couldn't have gone to Syria unless he traveled in foreign commerce, he used money from the United States, he used credit cards from the United States, he used bank accounts from the United States. When he got to Syria, he used money that he had from the United States here to support himself for the few weeks he was there. Does this sex act somehow involve trade or exchange with a foreign country, as at least it was originally understood to mean? No. No, but it involves travel in foreign commerce, which is, I think, the key difference. Well, interestingly, how does it really even involve travel? I mean, granted, he had to travel to get there, but you're not alleging that he had the intent to fly overseas to have sex with a minor? No, no. And he's there for a while, whatever that signifies, before this happens? The way the statute was amended in 2003, which under subsection C, there is no intent requirement. And we're not alleging that, or we don't think that the government had to prove that he traveled with the intent. Under subsection B, the intent... I wasn't suggesting that you had to prove that. I'm just saying that at least would be a plausible explanation as to how the travel affected the ultimate act when it occurred. But you don't have to allege that, and you're not. No, we're alleging that he traveled. The three elements are U.S. citizen, which he was, he traveled in foreign commerce, which he actually stipulated to a trial, and that he engaged in illicit sexual conduct once he got there. And that's what we're alleging under the Foreign Commerce Clause, and that that satisfies the Foreign Commerce Clause. And you would agree under the Interstate Commerce Clause the federal government couldn't reach this if it was a father and child and no one left their state. After Morrison, there's no way, right? Yes. Right. If it was interstate, if it all happened in Ohio, then it would have to be prosecuted in Ohio. And there is no federal statute that even tries to do this. Within the country? Yeah.  But there are other statutes... Are there findings? Are there findings when Congress... I mean, I understand they're filling this gap, and I understand how they're trying to... They probably really were thinking of sex tourism, but had troubles of proof in some cases. But were there any findings about this kind of situation and how it affects foreign, interstate foreign commerce? Do you... I don't know if there are findings by Congress. I know that there's case law that includes commercial sex acts and non-commercial sex acts, and says that that's fine. There's a case from this circuit, Phillips v. United States. Is that the one with the footnote? Which case? Who wrote that case? Is that a recent case? Yes. I can tell you. I don't... Yeah. Okay. No, no, no. You don't have to. I know what you're talking about. Okay. Phillips was... It's not much of a discussion about the issue, is it? It was a footnote, and it cited Bianchi. I think Bianchi, I think I'm pronouncing it right, which is the Third Circuit case, which deals more in-depth with the issue. Phillips was a supervised release violation, so it doesn't... You're right. That was just kind of the preliminary holding that it applied to both commercial and non-commercial sex acts, and it cited U.S. v. Bianchi, which is a Third Circuit case, which I cite in my brief, which found that Congress did not exceed its authority under the Foreign Commerce Clause when it enacted 2423 subsection C. How can we say that something, if it's not economic, it can't be covered by the Domestic Commerce Clause, yet when it's not economic, it can be covered by the Foreign Commerce Clause? I mean, it's the same words. Only... And it's very hard to find limitations on that clause, and that's been a real challenge for a couple hundred years, and they found one. Why wouldn't we use it in both settings? Well, you're talking about Morrison finding the civil penalties, the civil remedies? Yes. Yeah, yeah, but making the point that if something is non-economic, by definition, it's not going to be covered by something that regulates commerce. So that seems like a pretty good rule to apply to the Foreign Commerce Clause and doesn't seem to have many unfortunate consequences. Except Foreign Commerce Clause has always been a much broader review. It still has the word commerce in it. I think the broader point, the Japan Airlines broader point, is just that it's exclusive. The states can't do anything. That's what they mean by broader. The states can't touch that. We agree with that. That's easy. But that doesn't mean you get to take the word commerce and make it something else. Well, it's foreign commerce as opposed to interstate commerce, which is... There's no state sovereignty concerns. There's no federalism concerns, which is Japan lines. That's why it's exclusive. Which is why this comes under the... The statute arguably could actually be constitutional if you applied interstate commerce. There's case law that actually applies the standard for interstate commerce and says that he still traveled and he still used the channels of commerce when he traveled. I've been thinking about that and I can't quite sum it up with specificity the extent to which there are criminal penalties for conduct that involves travel across state lines but doesn't really involve criminal activity once you get there. I mean commercial activity. Kidnapping would be one. There are others that involve crimes against the person after crossing state lines, I think. I'm not sure that this is terribly different unless there's something about the difference in interpretation of the domestic commerce and foreign commerce clause that should lead to a different result. Do you... Can you just talk about that a little bit? If I'm... What am I missing there? Although certainly I've not... I've been thinking about that only since we got down this path. Well Congress has regulated... I don't know if I'm answering the question but Congress has... Well I mean you transport an automobile across state lines. Not only are you crossing a state line but there's commercial activity at the other end. But there are criminal... There are offenses in the code that do not involve commercial activity at the other end, I think. I think there are. I don't know. I don't know off the top of my head what those are. Well, I don't know. But your basic... I mean the thing that's hard about this case is your basic theory has to be the foreign government has just a general police power to regulate American citizens the minute they leave the border. Because the minute they leave the border they're, quote, traveled in foreign... They've traveled internationally. That makes... That's automatic. And then that then means you can just... There's just nothing you can't regulate even though the word is commerce. So that's what I think is really hard about the case. There's... I see no limiting principle at all because your theory is, hey, they traveled. That's the equivalent of traveling across state lines. And now we get to do whatever. And that's a pretty big deal. Well, not just traveling. They traveled and then they engaged in illicit sexual conduct when they got to the... That's the topic you regulated today. Tomorrow it's whatever you want. There's no limit. There's nothing they can't do once you say they've traveled. That's what I can't figure out. Well, I think there is a limit. Go ahead. What is it? Well, there has to be... If you say, okay, we're going to regulate your jaywalking in Montreal, Canada. Bingo. Why not? Well, there's due process concerns, I think, at that point. What is the due process part? They did jaywalk. There's no denying that. They've got the witnesses as they do in this case. Well, there's no victim in jaywalking. There's no one else to prosecute this type of case, really. I mean, that's one of the problems with this case. Who else is going to... What other entity is going to prosecute this case if it's not the federal government, the United States federal government? Is Syria going to prosecute this case? Well, but that's not... I mean, as a practical matter... These are U.S. citizens. As a practical matter, there's not anybody who wouldn't want to see this kind of conduct prosecuted. But you can't start with the need to prosecute it in order to figure out... No, but these are crimes against U.S. citizens. Two U.S. citizens in Damascus, Syria. And that's the difference. That's one of the differences. And I'm just trying to think of other differences. But that's one of the differences I think that's significant is that... Are you saying that the Syrian government could not have prosecuted this? Or you're just inclination is they wouldn't? My inclination is that they wouldn't. But they could. I don't know what their... I don't know. I assume they could. I assume they have some law on their books. That's not an element of the crime that the victim was a U.S. citizen, right? No, the only element is that the perpetrator is a U.S. citizen. So he could be prosecuted for the same activity with a non-family member who's not a U.S. citizen in Syria? Yes. So we're basically federalizing Syrian crimes? No, we're federalizing illicit sexual conduct by U.S. citizens abroad. And jaywalking? No, I don't think that's a... Explain to me why you concede that. Today you're conceding the federal government has no power to criminalize jaywalking abroad. Why? I'm interested in that answer. Well, I think... Because it's already... I don't know if it's already... I don't know. It's hard to... I'm trying to think of a distinction. It's actually a very good hypothetical. You call the embassy. We don't prosecute jaywalking in Canada. We just don't do it. Ah, sounds like this case. The only way to vindicate this is national government. You're talking... The government's going to prosecute these victimless crimes. They don't have an interest. And again, I'm coming back to the victims are U.S. citizens. And that's not an element of the crime. But they don't have an interest in protecting... I think all you're saying is they likely won't. But this is a power question, whether they can. Your answer really is, trust us. Not entirely. The answer is in the Federal Commerce Clause. And that's that they can... That they have broad authority under those. Well, perhaps failing any other... Perhaps failing in another line of argument, you might rely on whatever the circuits that have taken the contrary view have thought about this. Well, the circuits, the Third Circuit and Bianchi, and I found that just the travel and foreign commerce was enough. Just getting on a plane. Cummings, I think, and the Ninth Circuit found the same thing. Did that have a commercial component to it, other than the travel? Cummings was... retention of kidnapped children in a foreign country. And once they got there, the argument was... There was two parts to that. There was an intent argument as to whether you had to intend to keep them in a foreign country once you transported them. I'm interested in knowing whether... Coming back to this. I know that transporting someone across state lines, you know, a kidnapping, I know that's a Federal offense. What I can't remember is whether there's some other jurisdictional triggering mechanism, like, for example, a ransom demand has to be made. I don't think there is. That's the sort of thing you have... You can't help me on that, even in a more... You mean like a ransom demand that was made, like, through... Well, I mean, that theoretically introduced... Like in drug cases and... No, no, I mean just something that would introduce some economic activity into the crime of kidnapping. You know. Isn't the answer that if the element of the crime acquires crossing state lines, that's all you need? Yes. I think that's the answer to that. And why... Is there anything different about the Foreign Commerce Clause? I mean... Because here, it's not... The only element of the crime is that you were abroad. Well, yeah, you're a citizen abroad. Which is different. If you took a kid from this country abroad, part of the crime is leaving the country with the kid. But that seems different from an American citizen who's in Syria, kidnaps their kid, and goes to Jordan. That just seems like a different fact pattern. Well, it is a different fact pattern, but... It was really cited for... Or I cited it really for the idea that you didn't have to have intent. That intent wasn't part of the statute. You know, these plain error... The plain error cases that help you on the second prong are the ones that say if there's a conflict, that shows it's not plain. Are any of those constitutional cases? In other words, ones where the ultimate underlying question was whether the government even had power to do this. Weingarten, the case that... That fits that. Maliki cites, they initially say that the statute is applicable to conduct outside the United States. They don't have any problem with that. Their problem was the fact that there was no jurisdictional nexus to the United States. He had been in Belgium and England and Israel and not to the United States in years. And they said since he didn't... So they initially, as far as the statute itself, they didn't have any problem with the statute. They just found that one of the elements wasn't there. Thank you. Mr. Rossman? Thank you. Returning to the standard of review, I'd like to offer the court United States v. Titterington. And this was cited in the briefs. It says a true jurisdictional problem, say the federal government prosecutes a defendant for a non-federal crime, cannot be waived or altered by the party's conduct during the proceeding. And that's the essence of our argument. This was a non-federal crime.  Well, an alleged crime that occurred in Syria. It should have been a non-federal crime. It should have been prosecuted there, if at all. The witnesses were there. The alleged offense conduct was there. That's where this should have been investigated and prosecuted. Not in the United States. There's no such thing as fallback jurisdiction. And I think that's essentially what the United States is offering. If a foreign state won't prosecute this, if we think their laws are unwise or unjust, we can prosecute that here based on the fact that you had to leave the United States to get to this foreign country. And I think that is an enormous constitutional problem that would put all of our conduct overseas subject to federal regulation. And there is no limit. There is no limit. Congress could criminalize jaywalking. Congress could criminalize just about anything as long as you traveled in commerce to reach an overseas destination. So that's the point I want to make with that. His conduct was not commercial. It did not really involve the use of the channels of foreign commerce. His use of the channels was over when he got there. There was never any allegation that he had intent. His conduct did not affect the instrumentalities or things or persons in foreign commerce. This was purely a local allegation in Syria. Coming back to the interstate commerce comparison, he didn't cross any state lines or any foreign lines with the child. This happened purely in Syria. It didn't have a substantial effect on foreign commerce, just like violence against women or carrying a gun in the school zone does not have a substantial impact on commerce. Other courts have applied different standards of review. You know, Titterington was just a statute of limitations case. Titterington was a RICO case. It held that the statute of limitations was not jurisdictional. I'm not arguing that this was a 24-23 case or that it was directly on point. I'm just citing to the principle that prosecuting somebody for something that is not a federal crime goes to subject matter jurisdiction. In this case, it was a crime in Syria. What Congress has done here is essentially invade the sovereignty of other countries and has subjected them to sort of a fallback jurisdiction for the United States. Why is it invading their sovereignty if it's only dealing with the conduct of a U.S. citizen in those countries? What's offensive to their sovereignty there? Because they chose not to prosecute it for whatever reason. In fact, I don't think the allegations were ever reported there. So, Syria had... Syria had a stronger interest in prosecuting it than the United States does? Absolutely, because the offense conduct occurred there. Well, yeah, but it's... I mean, I understand that being a U.S. citizen is not an element of the victim being... But, I mean, you know, this is a U.S. citizen father to U.S. citizen children. It's hard to say that Syria's interest is necessarily stronger. You know, this is just a question for you to think about. If you have any great insight, write us a brief about it. But maybe the way to think about this that helps the federal government is when they say the federal government's power over foreign commerce is exclusive, what they're really saying is the federal government has power, not just that it normally has, but it really has all state power to protect state citizens. So, what we think is unusual is actually exactly what they do have. Just as they can do jaywalking laws in states, just as a state can do a jaywalking law, the foreign government can do it. At least if U.S. citizens are affected. Maybe that's what it means. I haven't seen that. I'm just... I don't know if that's right, but... But then we fall back on the definition of commerce. What is foreign commerce? I think it means to or from the United States. It does not mean what you do when you reach your destination overseas. Okay. All right. Thank you both very much for your argument. We've had an interesting discussion. Mr. Rossman, we know that you took this appointment under the Criminal Justice Act, and we're very, very grateful to you for your service and for undertaking to represent your client. Thank you both. We'll consider the case very carefully, I assure you. Next guy.